STATE of Minnesota, Respondent,

v.

Gary GARASHA, Appellant.

No. CX–83–5.

Supreme Court of Minnesota.

Dec. 7, 1984.

John S. Connolly, St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Alan Mitchell, St. Louis County Atty., John DeSanto, Asst. County Atty., Duluth, for respondent.

COYNE, Justice.

Defendant was charged with alternative counts of second-degree murder, one alleging that he killed the victim intentionally, the other that he killed the victim unintentionally in the course of committing a felony assault upon him. Minn.Stat. § 609.-19(1) and (2)(1982). The charges were based on the fatal shooting of an acquaintance of defendant early on February 7, 1982. Defendant admitted that he intentionally fired two shots at the victim, including the one that killed him, but claimed that he fired the shots in self-defense and without intending to kill the victim. A district court jury found defendant guilty of the felony murder count. The trial court sentenced defendant to 111 months in prison, which was within the presumptive sentence range (111–121) for a severity level X offense by a person with a criminal history score of zero.[1] On this appeal from

---

**1.** In 1983 the Sentencing Guidelines Commis-    sion reclassified felony murder as a severity

judgment of conviction and from the orders denying his motions for a new trial, defendant claims that he should be given a new trial because of misconduct by the prosecutor in his cross-examination of defendant and in his closing argument and because of newly discovered evidence. We affirm.

■ 1. (a) The claim of prosecutorial misconduct in the cross-examination of defendant is based on the prosecutor's asking defendant why he kept a copy of Physicians Desk Reference in his apartment. That book is a reference book that doctors use in prescribing drugs; in recent years the book has been marketed to the general public for use as a home medical reference book. Defendant's possession of the book first was revealed during the state's case-in-chief. Defense counsel used a copy of the book in cross-examining the pathologist about the behavioral effects of amphetamines, a trace amount of which was found in the victim's urine. On redirect the prosecutor, without objection, asked the doctor to look at a photograph of defendant's apartment after the shooting that showed a copy of Physicians Desk Reference on a table. The doctor identified the book as a copy of the book used by defense counsel in his cross-examination. Later, during the defendant's case-in-chief, defense counsel asked defendant about his possession of the book, and defendant replied that a doctor had given it to him to consult when his father was dying and was on a number of prescription drugs. On cross-examination the prosecutor asked defendant, who had testified that he had seen the victim take drugs, if he himself took drugs. Defendant said no. It was only when the prosecutor asked defendant if he kept the book because he wanted to know about drugs that defense counsel objected. After the trial court overruled the objection, defendant replied that he kept the book to read about medicines prescribed for him. Considering the totality of the circumstances, including the failure to timely object and

the strength of the state's evidence of defendant's guilt, we conclude that prejudicial error was not committed.

■ (b) Defendant's other claim of prosecutorial misconduct relates to the prosecutor's reference in closing argument to defendant's once having possessed a sawed-off shotgun. The subject of defendant's former possession of the sawed-off shotgun first was raised by the prosecutor in his cross-examination of defendant following defendant's testimony on direct about some guns he had owned, including the murder weapon. Defense counsel did not object until the prosecutor asked defendant why he had possessed such a gun. The court overruled the objection, and defendant replied that at the time he did not know it was a sawed-off shotgun, that it looked normal to him. Defense counsel did not object when the prosecutor later referred to the sawed-off shotgun in his closing argument. The reference in closing argument was merely a passing reference made as part of an argument that defendant had owned a number of guns, including the murder weapon, and was experienced in their use. The prosecutor did not urge the jury to make an impermissible inference from the fact of possession. As with respect to the evidence of defendant's possession of the drug reference book, we conclude that the reference to the shotgun did not constitute prejudicial error.

2. Defendant's claim of newly discovered evidence is based on a post-trial affidavit by a person whose identity has not been made a part of the public record. The affiant, an acquaintance of both defendant and the victim, claimed in the affidavit that on the afternoon before the shooting the victim said repeatedly that he was going to "get" defendant.

Recently, in *State v. Swanson*, 353 N.W.2d 128, 130 (Minn.1984), we stated, "Generally, in order to obtain a new trial on the ground of newly discovered evi-

---

level IX offense and changed the presumptive sentence for a severity level IX offense by a person with a criminal history score of zero from 97 (94–100) months to 105 (102–108)

months. To the extent that they benefit a prisoner, the changes are retroactive. Whether defendant is entitled to resentencing is not an issue on appeal.

dence, the defendant has to establish that the evidence was not known to him at the time of trial, that his failure to learn of it was not due to lack of diligence, that the evidence is material, and that it will probably produce an acquittal at a retrial." *See also State v. Jacobson,* 326 N.W.2d 663 (Minn.1982); *State v. Caldwell,* 322 N.W.2d 574 (Minn.1982).

The newly discovered evidence is cumulative in the sense that there was considerable other evidence admitted tending to show that the victim was angry with defendant because he believed defendant had reneged on a promise to pay the fees of an attorney they had jointly retained to represent them in an upcoming trial on misdemeanor assault charges. Some of the contents of the affiant's statement could be contradicted if the affiant testified at a new trial, and the credibility of the affiant, who has six prior felony convictions, would be vulnerable to impeachment. Even if the victim made the threatening statements attributed to him by the affiant, the statements do not diminish the power of the other evidence, including the physical evidence, which established beyond a reasonable doubt that defendant did not act in self-defense. Under the circumstances, we believe the district court properly concluded that defendant did not establish that the evidence probably would produce a different result at a retrial.

Affirmed.