**STATE of Minnesota, Respondent,**

v.

**Ofiong Louis SANDERS, Appellant.**

**No. C2–01–1939.**

Court of Appeals of Minnesota.

May 21, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant

County Attorney, St. Paul, MN, for respondent.

Steven J. Meshbesher, Meshbesher & Associates, P.A., Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

R.A. RANDALL, Judge.

Appellant challenges the postconviction court's denial of his request to correct his sentence from 180 months to 65 months. Appellant correctly argues that the original sentence was erroneously based on the career offender statute because he did not have the requisite sequential prior convictions to qualify as a career offender. Appellant argues that the court then violated his due process rights by resentencing him under the dangerous offender statute without a hearing to allow him to contest the state's claim that he was a dangerous offender. Appellant argues that he does not meet the requisite elements under the dangerous offender statute, that the district court erred in sentencing appellant as a dangerous offender because its findings were not supported by the record of the original sentence, and that he was denied a sentencing hearing on the merits. We reverse and remand for hearing.

## FACTS

In December 1997, a jury found appellant Ofiong Louis Sanders guilty of first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(a) (1996). Appellant's conviction was affirmed on direct appeal to this court. *State v. Sanders*, No. C9–98–1232, 1998 WL 901751 (Minn.App. Dec.29, 1998), *review denied* (Minn. Mar. 16, 1999).

The presumptive sentence for first-degree burglary based on the offense's severity level and appellant's criminal history score is 65 months. In April 1998, the court sentenced appellant as a career offender pursuant to Minn.Stat. § 609.152, subd. 3 (1996),[1] and executed a 180–month prison term.

In August 2001, appellant filed a the postconviction petition seeking to correct his sentence, arguing that he did not qualify as a career offender because he did not have five separate felony convictions as defined by the statute. The state conceded this point but then filed a written motion to resentence appellant under the new theory that appellant qualified as a dangerous offender under Minn.Stat. § 609.152, subd. 2 (1996).[2] Without any hearing, the court determined that the record from the original sentencing hearing, which discussed only the career offender statute, satisfied the "dangerous offender" criteria, and the court sentenced appellant under the theory that he was not a "career offender" but was a "dangerous offender." The court sentenced appellant to a 180–month prison term, the same as originally imposed by the court. Appellant now challenges the postconviction court's decision.

1. The Minnesota Legislature has since replaced Minn.Stat. § 609.152, subd. 3, with a new section for career offenders, Minn.Stat. § 609.1095, subd. 4 (1998). Act of April 6, 1998, ch. 367, art. 6, §§ 7, 16, 1998 Minn. Laws 666, 731–35. The only change to the provision is that a defendant must have "five or more" prior felony convictions to be sentenced as a career offender rather than "more than four" convictions, although this change is merely grammatical. *Id.*

2. The Minnesota Legislature has since replaced Minn.Stat. § 609.152, subd. 2 with a new section for dangerous offenders, Minn. Stat. § 609.1095, subd. 2 (1998). Act of April 6, 1998, ch. 367, art. 6, §§ 7, 16, 1998 Minn. Laws 666, 731–35.

## ISSUES

I. Does appellant qualify as a career offender?

II. Did the postconviction court err in resentencing appellant as a dangerous offender without a hearing, does appellant meet the statutory definition of a dangerous offender, and was the court's determination supported by findings from the original sentence?

## ANALYSIS

 An appellate court's review of a postconviction proceeding is limited to ascertaining whether there is sufficient evidence to sustain the court's findings. *Hale v. State*, 566 N.W.2d 923, 926 (Minn.1997). An appellate court affords "great deference to a district court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001) (citation omitted). The postconviction court's decision will not be overturned unless it abused its discretion. *Hale*, 566 N.W.2d at 926.

### I. Career Offender

The sentencing court may depart from the presumptive guidelines and sentence a defendant as a career offender if the court

> finds and specifies on the record that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

Minn.Stat. § 609.152, subd. 3 (1996). Relying on *State v. Huston*, 616 N.W.2d 282 (Minn.App.2000), appellant argues that he does not have the requisite five prior and sequential convictions to qualify as a career offender. In *Huston*, this court ana-

lyzed whether the statutory definition of a prior conviction should apply to the phrase "prior felony conviction" under the replacement statute, Minn.Stat. § 609.1095, subd. 4 (1998). A prior conviction is defined as

> a conviction that occurred before the offender committed the next felony resulting in a conviction and before the offense for which the offender is being sentenced under [Minn.Stat. § 609.1095].

Minn.Stat. § 609.1095, subd. 1 (1998). This court concluded that the definition of a prior conviction applied to a prior felony conviction, meaning "five sequential felony offenses and convictions are required (i.e., offense/conviction, offense/conviction, offense/conviction, etc.)." *Huston*, 616 N.W.2d at 283. This court determined that such a requirement "better serves the general purpose of the statute by permitting five full postconviction opportunities for reform." *Id.* at 284 (quotation omitted).

The state argues that this issue is not properly before this court because appellant failed to raise this issue when he appealed his conviction. *See Hale*, 566 N.W.2d at 926 (citing *"Knaffla* rule" that issues defendant knew or should have known but did not raise at time of direct appeal will not be considered in later petitions for postconviction relief). Because this court did not issue its interpretation of the career offender statute requiring five sequential convictions in *Huston* until after appellant's direct appeal, this issue *cannot be barred* by the *Knaffla* rule.

The following is a list of the offense and conviction dates of appellant's seven prior felony offenses:

| Crime | Offense Date | Conviction Date |
|---|---|---|
| First-degree burglary | May 12, 1992 | November 12, 1993 |
| Receiving stolen property | March 3, 1992 | July 14, 1992 |
| First-degree burglary | June 20, 1992 | November 23, 1992 |
| Attempted second-degree burglary | June 21, 1992 | November 20, 1992 |
| First-degree burglary | September 15, 1992 | November 23, 1992 |
| Attempted first-degree burglary | May 28, 1994 | November 17, 1994 |
| Attempted second-degree burglary | May 28, 1994 | November 17, 1994 |

Based on this court's conclusion in *Huston*, appellant does not have the requisite sequence of five felony offenses and convictions to qualify as a career offender. The state conceded this issue to the postconviction court and agreed that appellant could not be sentenced as a career offender. But then the state argued that the court's original 180–month sentence (essentially a triple upward departure) could be justified on other grounds; namely, the state moved the court to resentence appellant under the dangerous offender statute, Minn.Stat. § 609.152, subd. 2. The postconviction court determined that under the facts found at the original hearing, appellant was a danger to public safety because of a pattern of criminal behavior and fulfilled all the essential elements of the dangerous offender statute. The court then, without an evidentiary hearing, and relying simply on the state's written motion, sentenced appellant to 180 months as a dangerous offender.

## II. Dangerous Offender

■ Appellant argues his due process rights were violated because the court did not give him an opportunity for a hearing before the court resentenced him under the dangerous offender statute. We

agree. The postconviction court imposed a new sentence, under a different criminal statute, when it sentenced appellant under the dangerous offender statute.[3] When the state conceded that appellant's criminal history did not qualify him as a career offender, appellant should have been allowed his unqualified due process right of allocution before the sentencing court to contest the merits of the state's new theory before the court pronounced the new sentence. It was a new sentence, even though the amount of prison time, coincidentally, remained the same, because the sentence was pronounced under a new and different statute, the dangerous offender statute, that appellant had never been exposed to and had never been granted the opportunity in open court to speak against. Before sentencing a criminal defendant, a district court *is required* to allow both sides an opportunity to make statements relevant to the sentence. *See* Minn. R.Crim. P. 27.03, subd. 3.

The state asserts that a new hearing is unnecessary because the state presented sufficient facts at the original hearing to justify a sentence under the dangerous offender statute. Under the dangerous offender statute, the sentencing court

---

**3.** It should be noted that this is not a situation involving *State v. Calmes. State v. Calmes*, 632 N.W.2d 641 (Minn.2001). "[C]almes' sentence was corrected by the addition of a statutory mandated conditional release term, but no sentence of actual imprisonment was imposed." *Id.* at 650. In this case appellant's sentence is not being corrected due to a typographical error or to conform to a statutory mandate. Rather, appellant is being sentenced under a completely different statute than the one considered at the original sentencing.

may impose an aggravated durational departure from the presumptive imprisonment sentence up to the statutory maximum sentence if the offender was at least 18 years old at the time the felony was committed, and:

(1) the court determines on the record at the time of sentencing that the offender has two or more prior convictions for violent crimes; and

(2) the court finds that the offender is a danger to public safety and specifies on record the basis for the finding, which may include:

(i) the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity * * *, or long involvement in criminal activity * * *; or

(ii) the fact that the present offense of conviction involved an aggravating factor that would justify a durational departure under the sentencing guidelines.

Minn.Stat. § 609.152, subd. 2 (1996). A violent crime includes a first-degree burglary and attempted first-degree burglary. *Id.,* subd. 1. The state relies on the supreme court's ruling in *Williams v. State,* which stated that a sentencing departure will be affirmed despite improper or inadequate reasons if the record contains sufficient evidence to justify the departure. *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985). We disagree. The state misses the issue. We do not agree that the state presented sufficient facts on the dangerous offender issue at the first hearing because, at that hearing, appellant was sentenced under the *career offender statute, not the dangerous offender statute.* The state concedes that, at the original sentencing hearing, it had a choice between asking the court to sentence appellant under the career offender statute or the dangerous offender statute. The state *chose* the career offender statute because

it was "easier." Appellant never had an opportunity to argue the merits of the dangerous offender statute (he did not have to!) because the state did not present this issue at the original sentencing hearing. We understand the state's argument that perhaps there could be a factor or two needed to sentence appellant under the career offender statute that might overlap with factors needed to support a sentence under the dangerous offender statute, but so what? It is possible that under two completely disparate statutes, such as aggravated assault and murder or burglary and swindle, some factors might overlap, such as intent. That is not the point. When the notice to a defendant, and the entire contested hearing in open court, was on one issue, namely the career offender statute, it is not lawful for a sentencing court to change its mind later upon the state's suggestion, and imprison a defendant under a brand new theory presented for the first time. The record does not reflect in any fashion a waiver by appellant of his right of allocution. A full court hearing on the state's new theory that he should be sentenced under the dangerous offender statute is warranted. In addition, the sentencing court cannot make a record on the dangerous offender statute, and there will be none for meaningful appellate review, until both sides have been afforded the opportunity to argue the issue.

Appellant urges this court, to, without remand, sentence him to the presumptive sentence of 65 months. Appellant's attorney argues that if there is a remand for a new sentencing hearing on the dangerous offender statute, the state will simply present "new and manufactured facts" to fit the dangerous offender statute. We understand appellant's argument, but just as appellant is entitled to a full hearing to contest the state's position and to argue for what he deems to be an appropriate

sentence, the state is entitled to a hearing on its position that appellant's criminal history satisfies the criteria for sentencing him as a dangerous offender. Appellant is protected. At the resentencing hearing, the facts must be confined to the facts of record, which were established by both parties at the original hearing where the criteria was "career offender." The statute is different, but the facts of appellant's crime and his criminal history score are over, meaning they cannot "change." The state is allowed to argue its new theory, as long as it does not attempt to present new facts or change the record. The state, as well as appellant, could not have been aware of the *Huston* holding at the time of the original sentencing hearing, and the state has the same right to a hearing as appellant. For his part, appellant can argue that the facts on the record do not support a sentence under the dangerous offender statute.

We note that the state argued at oral argument that appellant did not "formally" move for a sentencing hearing. What the record shows is that appellant moved the court by written motion to correct his original sentence as a career offender following *Huston's* release. If the state had agreed that, based on *Huston*, appellant was incorrectly sentenced as a career offender, and if the state had informed the court that it had no objection to appellant's motion for a reduction in his sentence to the presumptive, the court could have corrected the sentence downward to 65 months without a formal hearing. By definition, this would have been what appellant requested. Instead, the state offered a brand new basis, meaning the dangerous offender statute, and urged the court to sentence appellant to almost a triple upward departure, 180 months. We conclude that because of the state's position, that a different statute, which appellant was not given notice of and neither side discussed

at the original hearing, should now be the criteria for sentencing, each party has an absolute right to a formal hearing to argue the issue on its merits.

The issue is placed in perspective when one looks at the procedure following a guilty verdict. The *normal* process of criminal procedure, of which criminal defense attorneys, prosecutors, and the courts are aware, simply takes over. If the conviction is for a felony, as here, the district court, following the guilty verdict, will have a short hearing on bail or lack thereof, and any other conditions that may be imposed before sentencing. The district court then informs counsel that it will order a presentence investigation and states that a date will be set for the sentencing hearing after the PSI is completed. Neither the prosecutor nor the defense attorney has to "demand" a sentencing hearing orally or in writing. The sentencing hearing is built into the process. No district court ever states, "After the presentence investigation is complete you can send a written motion to the court for what you want and then the court will impose a sentence from chambers, but there will not be a sentencing hearing in open court." That is essentially what happened to appellant in this case. He never received a hearing on the dangerous offender issue. Therefore, we remand this case so that appellant receives the sentencing hearing to which he is entitled.

Because we are reversing and remanding on this issue, we need not reach the merits of the other issues appellant presented.

## DECISION

Defendants have an absolute right to allocution in open court when a sentence is pronounced. The sentencing court cannot sentence appellant under the state's new

theory that appellant should be sentenced as a dangerous offender until appellant is afforded a full hearing to argue the merits of the state's new theory, on which the state has the burden of proof.

**Reversed and remanded.**